ORIGINAL

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 18-00272-CR-W-GAF |
| ROBERT J. THOMAS, JR., | |
| Defendant. | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Timothy A. Garrison, United States Attorney, and William A. Alford III, Assistant United States Attorney, and the defendant, Robert J. Thomas, Jr. ("the defendant"), represented by Travis Poindexter, Assistant Federal Public Defender.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to Counts Two and Four of the Indictment. Count Two charges the defendant with a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D), that is, possession with intent to distribute marijuana. Count Four charges the defendant with knowingly possessing a firearm in furtherance of drug

trafficking, specifically possession of marijuana with intent to distribute as charged in Count Two, all in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(c)(1)(A)(i). By entering into this plea agreement, the defendant admits that he knowingly committed these offenses, and is in fact guilty of these offenses.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offenses to which he is pleading guilty are as follows:

On December 1, 2017, at approximately 1:40 a.m., a light colored Chevrolet pickup bearing Missouri license plate number 2AU-403 was traveling northbound on Broadway Boulevard at West 39th Street, Kansas City, Missouri. As the silver Chevrolet pickup truck traveled through the intersection, it struck a pedestrian in the left lane and fled the area.

On December 1, 2017, at approximately 12:35 p.m., Sergeant ("Sgt.") Cowdrey, Detectives Burgess and Richardson, of the Traffic Investigation Section, conducted a residence check at 2304 Park Avenue in Kansas City, Missouri, to contact the driver of the Chevrolet pickup truck after it was determined the license responded back to the aforementioned address. Upon arrival, the detectives observed the silver Chevrolet that matched the description of the hit-and-run vehicle and it displayed the license number of the vehicle reportedly involved in this incident. While at that location, officers observed a person, later identified as Defendant Robert J. Thomas, Jr. The officers observed the defendant walk from behind the residence and the officers asked if he was the owner of the Chevrolet pickup truck. The defendant confirmed he was the owner of the vehicle. After a brief conversation with the defendant, officers took the defendant into custody and transported him to the East Patrol Station. Officers arranged to have the Chevrolet pickup truck towed to the City Tow Lot in anticipation of obtaining a search warrant.

On December 1, 2017, at 2:31 p.m., Dets. G. Burgess and Richardson, escorted the defendant from the East Patrol Detention Unit to the interview room in regard to the above-listed hit and run crash investigation. Det. Richardson advised the defendant of his rights by reading the *Miranda* Waiver Form aloud. The defendant affirmed that he understood his rights, signed the *Miranda* Waiver Form, and he agreed to talk to Det. Richardson.

Det. Richardson directed the defendant's attention towards his silver 2004 Chevy pick-up truck bearing Missouri license plate number 2AU-403. The defendant advised he spent the evening of November 30, 2017, at the park in the area of 11th and Prospect Avenue. Defendant Thomas explained several of his friends were at the park celebrating the life of Kareem Littlejohn who was killed in a homicide. Thomas stated he was drinking Hennessey and he doesn't normally drink Hennessey. Thomas remembered leaving the park around 11:00 p.m., on November 30, 2017. The defendant

2

advised he gave his friend's father a ride home after leaving the park driving his silver 2004 Chevrolet pick-up. The defendant claimed that he dropped off his friend's father at the apartments behind QuikTrip on U.S. 40 Highway and Sterling Avenue. The defendant stated that he thought he might have struck a curb somewhere near 31st Street and Troost or Tracy Avenue by a Long John Silver's Restaurant. The defendant indicated that at some point he drove home to his residence at 2304 Park Avenue. After parking his truck in his driveway, on December 1, 2017, at around 3:00 a.m., he noticed new damage to the wheel of his vehicle. The defendant indicated that he didn't remember striking anything else. The defendant then stated he didn't wish to state anything else without his lawyer. On December 1, 2017, at 2:52 p.m., the interview with the defendant was terminated and he was escorted back to the East Patrol Detention Unit.

On December 4, 2017, Sgt. D. Randol, Officers Karl Janning and Wilson responded to the Kansas City Impound Lot, 7750 East Front Street, Kansas City, Missouri, to execute the search warrant on the listed vehicle.

The vehicle was located inside the processing building, inside the gated lot of the impound lot. In preparation for downloading the vehicle's ACM, the driver's door was opened to access the ACM. In plain view inside the lower door pocket, was the butt end of a black handgun. The handgun, a Smith and Wesson, Model MP40C, .40 caliber pistol, Serial Number HAT3943, was found with eight (8) live rounds of ammunition in the magazine; and one (1) live round in the chamber. All of the rounds were Winchester 40 SW. Law enforcement officers secured the weapon for DNA testing.

Lying on the back seat, in plain view, Officer Wilson observed a clear blue Ziploc plastic baggie with four smaller clear plastic baggies with various colors of pills and white star shaped pills weighing approximately 74 grams. Officer Wilson also detected a very strong odor of marijuana coming from the area of the back seat, where a black Nike backpack was located. Officer Wilson opened the backpack and discovered a large pickle jar with several small baggies containing a green leafy substance. There was a large clear plastic bag that also contained several smaller baggies of a green leafy substance. There were also two smaller baggies that had two very large chunks of a green leafy substance weighing approximately 684 grams. In the same area of the green leafy substance, Officer Wilson observed two small clear plastic baggies with a white powdery substance weighing approximately 19 grams. In the smaller zipped area of the backpack, there was a small baggie of various colors of pills, similar to the ones observed lying on the back seat. There was also a small digital scale inside the backpack. The scale had residue on the weight area.

Forensic Specialist M. Steinke responded to the location to test the white powdery substance. Using a TruNarc device, she tested both bags separately; with a positive response indicating the presence of Cocaine HCL.

3

Sgt. Randol field-tested the three separate packages of the green leafy substance. Using three Duquenois-Levine Reagent tests, each one responded back with a positive reaction for tetrahydrocannabinol ("THC"), the active ingredient in marijuana.

On December 4, 2017, Det. Florido issued a Stop Order for Defendant Thomas due to the firearm and the controlled substances being located in his vehicle.

On February 22, 2018, at approximately 8:33 p.m., Officer Jackson observed a silver 2007 Chevy Impala bearing Missouri license plate number YK2-N1A) traveling southbound on Food Lane with expired tags. Officer Jackson conducted a traffic stop at the intersection of Food Lane and Harry Truman, Grandview, Jackson County, Missouri.

The vehicle came to a stop along with a second vehicle, a 2006 green Ford Mustang bearing Missouri license plate number 036QR7, which was located in front of the Impala. The driver of the Mustang, later identified as Defendant Thomas, exited his vehicle. Officer Jackson told Thomas to get back into the vehicle, but Thomas did not comply. Thomas stated: "That's my 15-year old daughter. That is my car." Officer Jackson advised Thomas to get back into his vehicle again, but Thomas did not comply. The defendant then began yelling at his daughter, who was later identified by law enforcement but out of a concern for her privacy her name is not identified in this factual basis. The defendant told his daughter to put the vehicle in park. Officer Jackson observed the Impala begin reversing towards Officer Jackson's patrol vehicle. Thomas then yelled again: "Put the vehicle in park." The Impala then began reversing a second time, nearly causing a crash with Officer Jackson's patrol vehicle. The defendant's daughter then put the vehicle in park. Thomas then stated, "Were going a couple streets up," and Thomas got back into the Mustang and continued traveling southbound on Byars. Thomas's daughter put the Impala in drive and began traveling southbound on Byars. Officer Jackson initiated his sirens and began to follow the vehicles until they pulled into a driveway located at 7400 East 126th Street, Grandview, Jackson County, Missouri. Officers conducted a felony vehicle stop and detained Thomas and his daughter. Officer Jackson detected a strong odor of marijuana emitting from the Chevy Impala.

Thomas's daughter advised the Impala belonged to the defendant. She stated that her father, the defendant, asked her to move the vehicle for him from an unknown address at the Arbors apartments in Grandview, Missouri. Officer Jackson searched the vehicle due to the strong odor of marijuana coming from the Impala. Officer Jackson found the following in the vehicle:

    a. 1 clear baggie containing marijuana weighing approximately 310 grams;
    b. 1 clear baggie containing marijuana weighing approximately 29 grams;
    c. 1 clear baggie containing marijuana weighing approximately 7 grams;
    d. 1 clear baggie containing marijuana weighing approximately 4 grams;
    e. 1 clear baggie containing marijuana weighing approximately 4 grams;

f.  1 clear baggie containing approximately 7 grams of 22 individually wrapped clear baggies of cocaine (tested positive using a Nartec, Inc. Cocaine Detection Kit);
g.  1 clear baggie containing approximately 4 grams of an unknown white and green pill/powdery substance;
h.  1 clear baggie containing approximately 2 grams of an unknown white and green pill/powdery substance;
i.  1 clear baggie containing approximately 18 grams of an unknown white and green pill/powdery substance;
j.  2 boxes of Good Sense fold top sandwich bags; and
k.  1 silver in color scale.

Officer Jackson located the above-mentioned drugs in the following areas of the vehicle:

- The baggie containing the cocaine, along with one of the baggies containing an unknown white and green pill/powdery substance was located in the driver side door handle pocket;

- Two baggies of marijuana were located in the front center cup holder;

- Two baggies containing an unknown white and green pill/powdery substance were located in the center console;

- Three baggies of marijuana were located in a pink, yellow, and blue Wonder Woman bag in the back center floor board;

- One box of Good Sense fold top sandwich bags was located on the front passenger seat and One box of Good Sense fold top sandwich bags was located on the back seat on the driver's side; and

- Officer Jackson also located a wallet in the driver's side overhead visor containing the defendant's driver's license along with $860 in cash. Officer Jackson seized the cash for evidence.

Defendant Thomas had a confirmed felony warrant for his arrest out of Kansas City, Missouri, for possession of a controlled substance (Warrant #17-101120). The defendant was placed into custody for this warrant and transported to 1200 Main Street where he was placed on a 24-hour hold for possession of a controlled substance.

On February 23, 2017, Dets. Florido and Jorgenson responded to Grandview, Missouri Police Station in regard to interviewing the defendant.

Upon arrival, Det. Florido made contact with Det. Paul Brooks of the Grandview, Missouri Police Department. Det. Brooks checked out Thomas and escorted him to an interview room. Det. Florido read aloud the *Miranda* Warning and Waiver Form 340

5

P.D. to him. Thomas stated he understood his rights and requested an attorney. Det. Florido immediately terminated the interview regarding the narcotics and firearm case Det. Florido was investigating.

Det. Florido subsequently obtained a search warrant to secure a DNA sample from the defendant. At approximately 12:30 p.m., Det. Brooks with the Grandview, Missouri Police Department escorted Dets. Florido and Jorgenson to the Detention Unit. Det. Florido explained to Thomas that he had a search warrant to obtain his DNA. Det. Florido obtained two buccal swabs from the inside of the defendant's mouth. The buccal swabs were placed in a plastic vial and sealed. Det. Florido transported the buccal swabs back to the Unit where they were packaged, sealed, signed, dated and placed in the Unit safe to be forwarded to the Property and Evidence Section.

The Kansas City, Missouri Police Crime Laboratory analyzed DNA taken from a buccal swab that was placed on the grip and textured area of the seized Smith and Wesson handgun. The lab concluded that there were five DNA contributors found on the sample, but that Thomas was included as a contributor. Specifically, the lab opined that the genetic information from the swab was 18 octillion times more likely to be observed if Thomas and four unknown individuals are contributors than if five unknown individuals are the contributors.

Pursuant to this plea agreement, the defendant admits that on December 1, 2017, within the Western District of Missouri, he knowingly possessed a mixture and substance containing marijuana, a Schedule I controlled substance, with the intent to distribute it. The defendant further admits that on the same date he knowingly possessed a Smith and Wesson, Model MP40C, .40 caliber semi-automatic pistol, bearing Serial Number HAT3943 to further his drug trafficking as charged in Counts One and Two of the Indictment. Specifically, the defendant admits that he possessed the aforementioned firearm, at least in part, to protect his cocaine and marijuana from being stolen by others and to safeguard the illicit drug proceeds he obtained from the sale of marijuana and cocaine.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the Indictment as well as all other uncharged related criminal activity may be considered as "relevant

6

conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charges to which he is pleading guilty.

5. **Statutory Penalties.** The defendant understands that upon his plea of guilty to Count Two of the Indictment charging him with possession with intent to distribute marijuana, the maximum penalty the Court may impose is not more than five (5) years of imprisonment, a $250,000 fine, not less than two years of supervised release, an order of restitution and a $100 mandatory special assessment per felony count of conviction which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class D felony.

The defendant understands that upon his plea of guilty to Count Four of the Indictment charging him with knowingly possessing a firearm to further a drug trafficking offense, the minimum penalty the Court may impose is not less than five (5) years of imprisonment, and the maximum penalty the Court may impose is not more than life imprisonment, not more than a $250,000 fine, not more than 5 years of supervised release, an order of restitution and a $100 mandatory special assessment per felony count of conviction which must be paid in full at the time of sentencing. The term of imprisonment the Court adjudges for Count Four of the Indictment much run consecutive to any term of imprisonment adjudged under Count Two. The defendant further understands that this offense is a Class A felony.

6. **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

    a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

7

b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of at least two years;

d. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

e. any sentence of imprisonment imposed by the Court will not allow for parole;

f. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

g. the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court.

7. **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to the defendant's drug trafficking or his knowing possession of a firearm that are identified in the indictment for this case for which it has venue and which arose out of the defendant's conduct described above. Additionally, the United States Attorney for the Western District of Missouri agrees to dismiss Counts One, Three, Five and Six at sentencing.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

8

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

8. **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the counts to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his pleas of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

    a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

    b. The applicable Guidelines Manual is the one that took effect on November 1, 2018;

    c. The parties agree that the applicable Guidelines section for Count Two is U.S.S.G. § 2D1.1(c)(14), which provides for a base offense level of 12;

    d. The parties agree that the applicable Guidelines section for Count Four is U.S.S.G. § 2K2.4, which provides for at least a Guideline sentence of 60 months' imprisonment, the minimum term of imprisonment required by statute;

    e. The parties understand that the defendant may qualify as a career offender under U.S.S.G. §§ 2K2.4(c) and 4B1.1. If the defendant does qualify as a career offender then the parties understand that the applicable total offense level for the crimes of conviction and the defendant's criminal history category could be substantially impacted;

10

f. The defendant has admitted his guilt and clearly accepted responsibility for his actions, and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a three-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a motion with the Court to that effect, unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty pleas, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

g. There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

h. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does <u>not</u> bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

i. Both the United States and the defendant may seek a departure or argue for a sentence outside of the Guidelines range deemed applicable by the Court. This agreement by the parties is not binding upon the Court or the United States Probation Office and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable";

j. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the Indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay;

k. The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that he will

11

make during his plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

11. **Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12. **Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

    a. oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b. comment on the evidence supporting the charges in the Indictment;

    c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

    d. oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

   a. the right to plead not guilty and to persist in a plea of not guilty;

   b. the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

   c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

   d. the right to confront and cross-examine the witnesses who testify against him;

   e. the right to compel or subpoena witnesses to appear on his behalf; and

   f. the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that if he pleads guilty, the Court may ask him questions about the offense or offenses to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights.**

   a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

13

b. The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **Financial Obligations.** By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

a. The Court may order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the Indictment which are to be dismissed and all other uncharged related criminal activity.

b. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

c. The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full.

d. Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

e. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution.

f. The defendant hereby authorizes the USAO to obtain a credit report

14

pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

g. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $200 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing.

h. The defendant certifies that he has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future.

i. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

17. **Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive, or to authorize any third party to request or receive, from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses

15

Case 4:18-cr-00272-GAF   Document 27   Filed 11/20/19   Page 15 of 18

arising out of the investigation or prosecution of this matter.

19. **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

20. **Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the

Court, his attorneys or any other party to induce him to enter his plea of guilty.

21. **No Undisclosed Terms.** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

22. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

TIMOTHY A. GARRISON
United States Attorney

Dated: 8/26/19

_____
William A. Alford III
Assistant United States Attorney

I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the Indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 8.26.19

_____
Robert J. Thomas, Jr.
Defendant

17

I am Defendant Robert J. Thomas's attorney. I have fully explained to him his rights with respect to the offenses charged in the Indictment. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, Robert J. Thomas's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 8·26·19

_____
Travis Poindexter
Attorney for Defendant

18

Case 4:18-cr-00272-GAF   Document 27   Filed 11/20/19   Page 18 of 18